■ NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Respondent, v. JOHN LOCOCO et al., Appellants, et al., Defendants. SIMONE LOCOCO et al., Plaintiffs, v. NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Defendant. — Declaratory judgment to the effect that insureds had violated co-operation clause of liability insurance policy, that plaintiff-respondent insurance company had properly disclaimed coverage, that it was not required to defend an action brought against insureds, and that it need not pay the default

judgment for $4,438 obtained by defendants-appellants against insureds in such other action, unanimously reversed and set aside on the law and the facts and judgment is ordered that plaintiff-respondent's disclaimer was invalid and plaintiff-respondent is obligated to pay the existing judgments against the insureds, with costs to defendants-appellants. Plaintiff insurance company failed to satisfy the burden of proving that insureds Gonzalez and Martinez, defendants in an automobile personal injury negligence action, evinced an attitude "of willful and avowed obstruction" of the efforts of the insurance company to defend the action (see *American Sur. Co.* v. *Diamond*, 1 N Y 2d 594, 599; *Wallace* v. *Universal Ins. Co.*, 18 A D 2d 121, 125). Such obstruction may not be inferred merely from disappearance of an insured. It is true that continued absence despite diligent efforts reasonably calculated to find the insured and obtain his co-operation may, in some circumstances, suffice to raise the inference of willful non-co-operation (see *Wallace* v. *Universal Ins. Co., supra*, pp. 124–125). However, seemingly substantial efforts utilized by the insurance company in this case were not reasonably calculated to obtain co-operation. The effort must be exerted with a reasonable degree of skill. A report of the accident was received from one of the insureds on November 17, 1958 which indicated only $10 property damage. On February 10, 1959, however, the insurance company received process commencing the action and then knew the claim was more substantial. Nonetheless, even though the insureds were Puerto Rican and lived in a Spanish-speaking neighborhood, a Spanish-speaking investigator was not used until January, 1961, about two years later. Even if the insurance company or its investigators did not at first realize the importance of utilizing a Spanish-speaking investigator in the neighborhoods involved, they should have, at least by July 8, 1959. On that date an investigator for one of the three investigating agencies utilized spoke to one Gonzalez at an address in the Bronx listed with the utility company for both Gonzalez and Martinez. Apparently he did not know Gonzalez was sought, for the only thing he did was simply to give Gonzalez a card printed in English and ask him to tell Martinez to telephone the insurance company attorney. The investigator emphasized to Gonzalez "that it would not cause any difficulty or trouble" and would benefit Martinez. He reported, Gonzalez "appeared to understand, but the fact that there was a language barrier made speaking with him a little difficult". Despite this, no Spanish-speaking investigator was sent back immediately to the address. Instead, the insurance company waited for about two weeks and then sent registered "Reservation of Rights" letters to each insured in formally-phrased English. About one and one-half years later another agency reported as follows concerning an interview with the former shop foreman of Martinez: "He canvassed the entire factory, seventeen Puerto Rican employees * * * [the] employees speak halting English. The conversation was difficult. * * * He said that he had remembered Martinez, and that one day the [*sic*] man had walked in with a garnishee on Martinez' salary for a watch. Martinez took off the watch, through [*sic*] it in the air and left, and was never seen again. [The foreman] * * * stated that of the seventeen employees, there are seventeen who have garnishees on their salaries. He says that they are constantly being exploited by various types of salesmen." This report mentions vacillating and conflicting statements by the employees placing the insured in the Bronx or mentioning they had "returned to Puerto Rico". This agency concluded that a Spanish-speaking adjuster would be used thereafter. Five visits by this adjuster in January and February, 1961 to the address utilized one and one-half years

earlier proved fruitless. He did find the brother of Gonzalez elsewhere in the Bronx, but was told that Gonzalez " was in Puerto Rico, address unknown." The previous formal letters, telegrams, and investigators, if the insureds were aware of them, may have connoted some unspecified trouble for them. It is most likely that they did not understand why they were being sought, and plaintiff insurer did not do that which was calculated to locate or reassure the insureds, if located. Since the methods utilized were not reasonably calculated to find the insureds or invite their co-operation, it cannot be determined that the insureds were willfully non-co-operative. Settle order on notice. Concur — Breitel, J. P., McNally, Stevens, Eager and Steuer, JJ.